IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL ARMENDARIZ,      )
     )
        Plaintiff,      )
     )
    v.      )     CASE NO. 2:19-CV-1046-MHT-CSC
     )            (WO)
     )
COMMISSIONER DUNN, *et al.*,      )
     )
        Defendants.      )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended, filed on December 13, 2019, by Daniel Armendariz, an indigent state inmate, challenging actions which occurred at Elmore Correctional Facility.  (Docs. 1, 11, 38 and 50).  First, Plaintiff alleges that the Defendants acted with deliberate indifference when they failed to protect him by allowing another inmate to attack him and stab him sixteen times.  Specifically, he claims that Defendants Commissioner Dunn and Warden Headley "failed to address overcrowding and understaffing prior to assault, knowing that these issues create an increase {sic} risk to inmate safety."  (Doc. 1 at p. 3).  He also claims

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

that "the officers on duty the day of the assault in Bravo Dorm[2] knew prior to the assault that Bravo Dorm had a history of violence and failed to make routine observations and walk arounds." *Id.* Finally, he alleges that Defendants Lt. Davis and Wexford Health Sources Inc. "showed deliberate indifference by delaying emergency medical attention." *Id.*

The named Correctional Defendants are Commissioner Jefferson S. Dunn, Warden Joseph H. Headley and Correctional Officers Lt. K. Davis and Malik Wright. (Docs. 1 and 50). The Plaintiff does not name any individuals as medical defendants. Rather, he names Wexford Health Sources, Inc. as the sole Medical Defendant and he sues each Defendant in their individual and official capacities. (Doc. 1 at p. 2). He seeks monetary damages and injunctive relief requesting "A.D.O.C. and Wexford Health Sources Inc. to change policy or common practice to inmates with stabb {sic} wounds above the waist and head trauma to be taken to the hospital immediately." (Doc. 1 at p. 4).

The Correctional Defendants filed special reports, as supplemented, (Docs. 43, 44, 92, 96, 126, 138, and 163). Defendant Wexford also filed a special report, as supplemented. (Docs. 25 and 40). These special reports, as supplemented, included relevant evidentiary materials in support of these reports, specifically affidavits and prison documents addressing the claims presented by Armendariz. In these documents,

---

[2] Plaintiff amended his Complaint to add Ethan Brand (Doc. 38) and Malik Wright (Doc. 50) as Defendants. Thereafter, the Court dismissed Brand as a party to this action. (Docs. 52, 72, and 73). Defendant Wright filed an answer and special report, as supplemented, denying the Plaintiff's claims against him. (Docs. 126 and 163).

the Defendants deny they acted with deliberate indifference to Armendariz' medical and safety needs.

After reviewing the special reports and exhibits, the court issued an order on February 8, 2021, requiring Armendariz to file a response to the Defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 107). This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 107 at pp. 2-3). Armendariz filed multiple responses to this order. (Docs. 113, 121, 128, 134, 135, 142, 143, 170, 171, 172). Pursuant to the directives of the order entered on February 8, 2021, the court now treats the Defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II. SUMMARY JUDGMENT STANDARD

To survive the properly supported motion for summary judgment submitted by ADOC Defendants, Plaintiff must produce some evidence supporting his constitutional

claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25,

2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (Citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.")

Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Armendariz has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

## III.  FACTS

On August 3, 2018, around 4:00 p.m., the Plaintiff was assaulted by inmate, Ernest Washington, in Bravo Dorm One at the Elmore Correctional Facility in Elmore, Alabama. The dispute involved a pack of cigarettes.  (Doc. 50 at pp. 5-6).   Plaintiff was stabbed numerous times in the back.  (Docs. 1, 38 at p. 3 and 25-1 at p. 23).  The Body Chart created around 5:30 p.m. by a nurse at Staton Correctional Facility documents Plaintiff's report that "another inmate stabbed me" and noted "laceration . . . to L{eft}

ear, abrasions and small indentions . . . throughout back area . . . from ice pick." (Doc. 25-1 at p. 23). Plaintiff claims that he fought off the attack for 20 minutes, and then after cleaning himself in the bathroom, was finally able to evade his attackers and make his way to the observation cube. (Docs. 38 at p. 3, 106 at p.2).

When Plaintiff self-reported to the observation cube Defendant Malik Wright[3] was on duty. Thereafter, he was taken to the shift office, where Defendant Correctional Officer Kahdra Davis[4] documented the attack, which included pictures, written reports and discussions of a living agreement with Plaintiff. (Docs. 38 at p. 3, 43-4 at pp. 2-23 and 50 at pp. 7-8). Next, Plaintiff was taken to the medical unit at Staton Correctional Facility where he was seen by medical personnel at 5:35 p.m. *Id*. The process of documenting the attack at Elmore Correctional Facility delayed Plaintiff's transport to Staton by about 30 minutes. (Docs. 38 at p. 3 and Doc. 106 at p. 2).

Plaintiff was transported to Jackson Hospital in Montgomery, Alabama around 6:30 p.m. (Docs. 38 at p. 3 and Doc. 106 at p. 2). The Wexford Health Emergency/Hospital Notification Form confirms Dr. Borwicz at Staton diagnosed "possible lung puncture" and authorized Plaintiff's travel to the ER at Jackson Hospital by state vehicle at 6:30 p.m. (Doc. 25-1 at p. 24). Plaintiff arrived at Jackson Hospital's Emergency Room around 7:15 p.m. where he was examined and a CT chest with contrast

---

[3] Defendant Wright testified that he had no specific recollection of this event and denies that he acted with deliberate indifference to Plaintiff's safety. (Doc. 126-1).

[4] Defendant Davis denies that she acted with deliberate indifference to Plaintiff's health needs by unduly delaying medical attention. (Doc.43-3 at p.1).

was conducted which showed "moderate left and mild right pneumothoraces with scattered atelectasis." (Docs. 106 at p. 2 and Doc. 83-1 at p. 6). Plaintiff claims that this delay of about 3 hours between his attack and arrival at Jackson Hospital constitutes deliberate indifference by the Defendants. Plaintiff was released from Jackson Hospital to Kilby Correctional Facility Medical Unit on August 6, 2018, where recovery from his partially collapsed lungs was regularly followed until his discharge to Elmore Correctional Facility on August 8, 2018. (Doc. 25-1 at pp. 28-43).

## IV. DISCUSSION

### A.    ABSOLUTE IMMUNITY

To the extent Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages, these Defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).   Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.   The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).   In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).   Accordingly, all claims against Defendants in their official capacities for

8

monetary damages are due to be dismissed.  The Court will now turn its attention to Plaintiff's claims against the Defendants in their individual capacities for both monetary damages and injunctive relief.

## B.  RESPONDEAT SUPERIOR

To the extent the Plaintiff alleges that Defendants Commissioner Dunn, Warden Headley, Lt. Davis, and Wexford Health are liable to him in their supervisory positions for the actions or omissions of their subordinates based on a theory of respondeat superior, that claim must fail.  Indeed, the law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). Furthermore, insofar as Plaintiff seeks to hold Commissioner Dunn, Warden Headley and Lt. Davis liable for the treatment provided by medical professionals, and any delay resulting in the process, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Even assuming *arguendo* that Commissioner Dunn, Warden Headley and Lt. Davis exerted some control over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . .  A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh,* 268 F.3d at 1035 (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding

that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for actions of the Wexford Health personnel could attach to the other named Defendants only if these Defendants "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

The record is clear that Commissioner Dunn, Warden Headley and Lt. Davis did not personally participate or have any involvement, direct or otherwise, in the medical treatment provided to Plaintiff. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the treatment provided to Plaintiff and provided treatment to him in accordance with their professional judgment upon assessment of his physical condition. (Docs. 43-3, 92-1 at pp. 1-2, 92-2, 92-3 and 96-1 at pp. 1-3).

In light of the foregoing, Commissioner Dunn, Warden Headley and Lt. Davis can be held liable for decisions of medical personnel only if they undertook actions which bear a causal relationship to the purported violation of Plaintiff's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these Defendants, Plaintiff must present sufficient evidence which would be

admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or . . . facts [that] support an inference that [the correctional defendants] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  After extensive review of the pleadings and evidentiary materials submitted in this case, it is clear that Plaintiff has failed to meet this burden.

As relief Plaintiff requests this Court issue an injunction to ADOC and Wexford Health Sources requiring them "to change policy or common practice to inmates with stabb {sic} wounds above the waist and head trauma to be taken to the hospital immediately {sic}."  Doc. 1 at p. 4.  However, Plaintiff provides no evidence of the existence of any policy or practice which runs counter to his request for injunctive relief.  Indeed, as addressed more fully below, Plaintiff fails to demonstrate Defendant Lt. Davis and Wexford Health personnel acted with deliberate indifference to his medical needs where he received medical care at Staton Medical Unit within one hour of his attack and he received emergent care at Jackson Hospital within three hours of his attack.

Furthermore, the record before the court contains no probative evidence to support an inference that Commissioner Dunn, Warden Headley or Lt. Davis directed medical personnel to act unlawfully or knew that they would act unlawfully and failed to stop

such action.  In addition, Armendariz has presented no evidence of obvious, flagrant or rampant abuse of continuing duration regarding his receipt of medical treatment in the face of which these Defendants failed to take corrective action. Instead, the undisputed medical records indicate that Armendariz had access to medical personnel at Staton within an hour of his attack and at Jackson Hospital within a couple of hours after his examination at Staton. The undisputed records also demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by Commissioner Dunn, Warden Headley and Lt. Davis.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not justified.  *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Accordingly, the Court concludes that the Plaintiff's claims premised upon a theory of respondeat superior are due to be dismissed.  Accordingly, the Court will turn its attention to the Plaintiff's deliberate indifference claims.

**B.  DELIBERATE INDIFFERENCE**

1.  **Standard of Review.**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth

Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence"

14

and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38

(internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal

quotation marks and citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk. *Farmer*, 511 U.S. at 837.

### 2.  Medical Treatment

Plaintiff claims that Lt. Davis was deliberately indifferent to his medical needs because she delayed taking him for treatment at Staton while she documented his attack. Plaintiff further claims that unnamed Wexford personnel further delayed his access to emergent care. The undisputed facts show that after Defendant Correctional Officer Kahdra Davis documented the attack, which included pictures, written reports and discussions of a living agreement, the Plaintiff was taken to the medical unit at Staton Correctional Facility, which is within a mile of Elmore Correctional Facility, where he was seen immediately by medical personnel. (Docs. 43-4 at pp. 2-23 and 50 at pp. 7-8). The process of documenting the attack at Elmore Correctional Facility delayed Plaintiff's transport to Staton by about 30 minutes. (Docs. 38 at p. 3 and Doc. 106 at p. 2). Even

though Plaintiff was conscious and presented himself to the observation cube where Defendant Wright was on duty, Plaintiff claims that his injuries were so severe that as a lay person Defendant Lt. Davis and unnamed Wexford medical personnel should have known he needed immediate emergent care.

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).

18

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things[:] awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In determining whether a delay in medical treatment constitutes deliberate indifference, courts consider the seriousness of the medical need, whether delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to

the level of a constitutional violation, he "must place verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted). Furthermore, the subjective knowledge of risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette,* 533 F.3d at 1331.

Even assuming that the Plaintiff's multiple stabbing injuries presented a serious medical need, there is no evidence in the record that Plaintiff was visibly in distress while Defendant Lt. Davis or any of the Wexford medical personnel tended to him.  Indeed, Plaintiff presented himself to the observation cube following the attack, and he was conscious and communicative throughout the entire time Defendant Lt. Davis documented the attack.  Furthermore, the body chart completed by medical personnel at 5:35 p.m. confirmed the Plaintiff was conscious and communicative and no distress was noted.  (Doc. 25-1 at p. 23).  Specifically, the body chart recorded that Plaintiff suffered a "laceration . . . to L{eft} ear, abrasions and small indentions noted throughout back area." *Id.*  Indeed, the Plaintiff points to no evidence of an obvious immediate risk to Plaintiff's medical condition which Defendant Lt. Davis or any Wexford personnel ignored. Finally, after a careful independent review of the record, the Court concludes that Plaintiff failed to "place verifying medical evidence in the record" establishing the

detrimental effect caused by either the 30-minute delay of his transport to Staton, during which time Defendant Lt. Davis documented the attack, or the delay of three hours before he received emergency medical care at Jackson Hospital and a CT scan confirmed his partially collapsed lungs. *Surber,* 206 F. App'x at 933.  Accordingly, summary judgment is due to be granted on the Plaintiff's medical deliberate indifference claims.

    **3.**  **<u>Failure to Protect</u>.**  To survive the properly supported motion for summary judgment filed by the Defendants, Armendariz must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (Citation omitted).  If he establishes these objective elements, Armendariz must then satisfy the subjective component.   This requires Armendariz to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "**particular threat or fear *felt by [the] [p]laintiff*.**" *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

21

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Armendariz alleges that Defendants Warden Headley and Commissioner Dunn acted with deliberate indifference to his safety regarding the assault committed against him by inmate Washington on August 3, 2018. In support of this claim, Armendariz asserts that the assault occurred due to overcrowding and understaffing at Elmore Correctional Center. (Doc. 1 at p. 3). In support of this assertion, Plaintiff alleges that Defendants Headley and Dunn "failed to address overcrowding and understaffing prior to the assault, knowing that these issues create an increase {sic}risk to inmate safety." *Id.* Plaintiff also claims that Defendant Wright, who was on duty in Bravo Dorm on the day of the assault, failed to protect him from the assault by inmate Washington because he "knew prior to the assault that Bravo Dorm had a history of violence and failed to make routine observations and walk arounds." *Id.* Plaintiff does not claim that prior to the assault he feared or felt threatened by inmate Washington or any other inmate. Nor does he claim that any named Defendant was aware of a specific threat to his safety by inmate Washington. Thus, as further explained below, Plaintiff's failure to protect claim fails. *Johnston,* 135 F. App'x at 377.

Rather, Plaintiff points to general prison conditions including understaffing and overcrowding as the cause for his assault and seeks to impute knowledge to Defendants of a threat to him based on these conditions. This claim fails under existing law. *Burnette,* 533 F.3d at 1331. Even so, the Court will address Plaintiff's argument that

understaffing and overcrowding at Elmore Correctional Facility caused his assault on August 3, 2018.  In response, the Defendants adamantly deny they acted with deliberate indifference to Plaintiff's safety.  Specifically, Defendant Commissioner Dunn testified that he "does not handle day to day operations at Elmore Correctional Facility" and that he has "no personal knowledge of the matters alleged in the Complaint."  (Doc. 43-1). Further, he testified extensively about his efforts to improve the safety of Alabama prisons.  (Doc. 92-1).  Specifically, he testified as follows:

> "[s]ince my appointment to the position of Commissioner in 2015, I at the direction of the Governor, have worked diligently to improve the overall conditions of all Alabama prisons (including Elmore), increase security staffing, decrease inmate population, decrease the levels of violence, and decrease the amount of contraband coming into the facilities that contribute to the acts of violence among the inmate population."

(Doc. 92-1 at p. 3).  Also, Defendant Headley testified with respect to Plaintiff's overcrowding claim that he "did not have authority in the Alabama Department of Corrections hiring procedures nor the amount of inmates that was housed at the Elmore Correctional Facility."  (Doc. 92-3 at pp. 1-2).  Headley further testified that the correct protocols were followed in the investigation of the incident and discipline of inmate Washington.  (Doc. 92-3 at p.1).  Finally, Defendant Correctional Officer Malik Wright testified that "[w]hile employed by ADOC, I did my best to protect the safety of the inmates and prison staff.  I was not aware of any threat of immediate serious injury to Mr. Armendariz at anytime {sic} while employed at Elmore Correctional Facility."  (Doc. 126-1).

Indeed, Armendariz has offered no evidence that Defendants Dunn, Headley and Wright were aware of a strong likelihood that he would be assaulted by inmate Washington on August 3, 2018. Plaintiff does not allege and the record is devoid of evidence that the Defendants had knowledge of a credible threat to him at the time of the challenged attack from which the Defendants could infer that a substantial risk of imminent harm existed to Plaintiff at the time the assault at issue occurred. In sum, there is no evidence before the court that the Defendants had knowledge of any impending risk of serious harm posed by inmate Washington immediately prior to the attack made the basis of the complaint. Armendariz has failed to present any evidence showing inmate Washington posed "an objectively substantial serious risk of harm" to him prior to the assault about which he complains, a requisite element for establishment of deliberate indifference. *Marsh*, 268 F.3d at 1028–29.

Furthermore, even if Armendariz had satisfied the objective component, his deliberate indifference to safety claim nevertheless fails as the record is devoid of evidence that the Defendants were subjectively aware of a substantial risk of serious harm to Plaintiff posed by inmate Washington at the time of the assault made the basis of this complaint. *Johnson*, 568 F. App'x at 722 (holding that complaint properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009)

24

(holding that where plaintiff did "not identif[y] any specific 'serious threat' from [inmate attacker]" or report any such threat to the defendants, mere "fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate]."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was generally "in fear for [his] life.").

Based upon the court's careful review of all the evidence, the court concludes that the Plaintiff fails to allege, much less offer any proof, that the Defendants were aware he was at risk for suffering an assault by inmate Washington.  Further, Plaintiff offers no evidence that the Correctional Defendants deliberately refused to intercede in the altercation or encouraged it in anyway.  Thus, the Court concludes that summary judgment is due to be granted in favor of the Defendants on the claim alleging they acted with deliberate indifference to Plaintiff's safety.

25

# V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **December 16, 2022** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 1st day of December 2022.


    /s/    Charles S. Coody        
    UNITED STATES MAGISTRATE JUDGE